IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00934-CYC

CAN IV PACKARD SQUARE LLC,

    Plaintiff,

v.

HARBOR REAL ESTATE COMPANY, LLC, and
CRAIG E. SCHUBINER,

    Defendants.

---

# ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

    Contending that undisputed evidence shows that a March 2020 transfer of real property from defendant Craig E. Schubiner to defendant Harbor Real Estate Company, LLC ("Harbor") was a fraud aimed at evading collection on a judgment against Schubiner, plaintiff Can IV Packard Square LLC moves for summary judgment on three of its claims. ECF No. 149. Because the transfer meets the elements of the Colorado Uniform Fraudulent Transfer Act's ("CUFTA"), Colo. Rev. Stat. § 38-8-101 *et seq.*, constructive-fraud provision, *id.* § 38-8-106(1), the motion is granted. Because three of the defendants' affirmative defenses fail as a matter of law, the motion is also granted to the extent it seeks judgment on them. Harbor also seeks partial summary judgment, ECF No. 148, but this is its second such motion, *see Can IV Packard Square LLC v. Harbor Real Est. Co., LLC*, No. 23-cv-00934-MEH, 2024 WL 4474768 (D. Colo. Aug. 16, 2024), and "[a] party may not file multiple motions for summary judgment without prior

permission from the Court." D.C.COLO.MJ V.10. Because Harbor did not request such permission, its motion is stricken.

## LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation marks omitted). "The court views the record and draws all favorable inferences in the light most

2

favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

In its evaluation of a summary-judgment motion, a district court must construe a pro se plaintiff's pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," though it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## **FACTS**

Because a district court must determine whether there is a genuine dispute as to any material fact, Fed. R. Civ. P. 56(a), the Federal Rules of Civil Procedure task a party "asserting that a fact . . . is genuinely disputed" to "support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). This Court's Practice Standards further indicate that a party opposing summary judgment must particularly deny or admit a movant's proposed set of undisputed facts with specific citations to evidence in the record. D.C.COLO.MJ V.10. These requirements exist because the parties' efforts are supposed to aid the Court's decision.

Here, the parties' submissions, at times, divert from that purpose. Schubiner, for example, rather than responding particularly to the plaintiff's proposed set of undisputed facts, piggybacked off Harbor's responses. ECF No. 161 at 3 n.1. Those responses, in turn, found their way into a filing that simply pretended that the 20-page limit for summary-judgment responses, D.C.COLO.MJ V.2, did not exist. And both sides litter their sets of undisputed "facts" with opinions and spin. The plaintiff, for instance, included its take on the defendants' litigation conduct as a material "fact." ECF No. 149 at 3; ECF No. 167-1 at 5. For its part, Harbor recites the substance of Schubiner's declaration pontificating on proper practices in property titling, ECF No. 165 at 18 (citing ECF No. 163 ¶ 16); ECF No. 167-1 at 27, which is devoid of any

3

factual support for such "self-serving claims." *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1241–42 (D. Colo. 2008) (discussing deposition testimony). That was not the only instance of dressing up opinions in factual garb. *See* ECF No. 165 at 19; ECF No. 167-1 at 29, 30. These efforts to flout the rules could justify an order to strike the pleadings and have the parties start over. Rather than doing that, the Court disregards the non-facts offered as facts and proceeds to the merits.

With that prologue in place, the following facts are undisputed and identified by reference to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), viewed in the light most favorable to the non-moving parties.

### I. The Loan and Subsequent Litigation

In October 2014, the plaintiff made a construction loan to a limited liability company Schubiner controlled. ECF No. 4 ¶ 6; *In re Packard Square, LLC*, 586 B.R. 853, 856 (Bankr. E.D. Mich. 2018). Schubiner executed a Non-Recourse Carve Out Guaranty (the "Guaranty") providing that the plaintiff could collect against him personally for a default on the loan under specified circumstances. ECF No. 59-1 at 1. In December 2019, a Michigan state court found such conditions to be satisfied, entering a roughly $14 million judgment against Schubiner. *Can IV Packard Square LLC v. Schubiner*, No. 18-167408-CB, 2019 WL 12383195, at *9 (Mich. Cir. Ct. Dec. 11, 2019) ("*Schubiner I*"). Schubiner appealed, but the Michigan Court of Appeals affirmed entry of the judgment, *Can IV Packard Square, LLC v. Schubiner*, Nos. 352510, 354185, 354821, 354186, 2021 WL 1711593, at *17 (Mich. Ct. App. April 29, 2021). The Michigan Supreme Court denied both leave to appeal, *Can IV Packard Square, LLC v. Schubiner*, 970 N.W.2d 324 (Mich. 2022), and a motion to reconsider that denial, 974 N.W.2d 200 (Mich. 2022).

Following its judgment, in January 2020, the Michigan state court entered an order enjoining Schubiner "from transferring assets outside of the normal course of business pending satisfaction of the final judgment." ECF No. 38-3 at 4. The court found that "based on the facts and circumstances of the case" such an "order [wa]s appropriate in order to carry out the full intent and purpose of the judgment" and applicable law. *Id*. The court further ordered: "any person or entity having knowledge of this Order shall be enjoined from accepting any interest in property from [Schubiner], individually or jointly, outside the normal course of business, pending satisfaction of the judgment." *Id*.

This case concerns the plaintiff's attempts to collect on that judgment. Two months after the Michigan state-court injunction, Schubiner recorded a quitclaim deed regarding a parcel of real property in Aspen, Colorado (the "Property") dated March 23, 2020 with the Pitkin County Clerk and Recorder at reception number 663678, indicating that the Property was being conveyed to Harbor. ECF No. 149-8.

## II. The Property and Harbor

Schubiner had purchased the Property years earlier, in 1992. ECF No. 149-1. Some two and a half years later, Schubiner formed Harbor as a Michigan limited liability company, ECF No. 149-2; ECF No. 167-1 at 6 (SOF 10), preceded by the execution of Harbor's Operating Agreement five months earlier. ECF No. 149-3. At its inception it purported to have two members: Schubiner, who held a 100% interest in Harbor, and his brother, who held a 0% interest in Harbor. *Id*. at 13. By September 26, 2023, Schubiner owned all membership interests in Harbor. ECF No. 34 ¶ 2.

Schubiner executed an amendment to Harbor's Operating Agreement, dated January 3, 1996, through which Harbor "acknowledge[d] that Schubiner is simultaneously herewith contributing" the Property to Harbor. ECF No. 149-5. The amendment bears his signature twice,

5

once on behalf of Harbor and once on behalf of himself. *Id.* Through the agreement, Schubiner was also "deemed to have contributed equity of $50,000.00 to [Harbor], that being the deemed equity in the property after accounting for the outstanding loan balance to" the seller who financed the 1992 purchase. *Id.* After 1996, loans taken out against the Property identified Schubiner as the borrower. ECF No. 149-7. For example, in 2013, Schubiner signed a Deed of Trust relating to a $1,900,000.00 loan from TCF National Bank secured by the Property. *Id.*

The 2020 quitclaim deed related to a transaction in which Harbor received $585,000.00 from Blue Sky Mortgage, LLC, secured by the Property. ECF No. 149-9 at 1–2. It reflects consideration of $10.00 Harbor gave to Schubiner for the Property. *Id.* at 1. The Deed of Trust relating to that mortgage was recorded on March 25, 2020. *Id.* at 1. That same day, the existing mortgage on the Property was paid off and Harbor received $317,364.70 — the balance of the loan from Blue Sky after satisfying the existing mortgage. ECF No. 149-11 at 1; ECF No. 149-12 at 135:6–136:9. The prior day, Schubiner, as the manager of Harbor, executed a "Resolution of Harbor Real Estate Company LLC" that approved the "refinancing of [the Property] in the amount of $585,000" and "authorize[d] the deeding of the [Property] to the LLC." ECF No. 149-13. Currently, Harbor's sole asset is the Property. ECF No. 167-1 at 13 (SOF 21).

## ANALYSIS

The plaintiff seeks summary judgment on its first, second, and fourth claims against the defendants.

### I. Constructive Fraud

The second of those claims asserts a CUFTA constructive-fraud claim. ECF No. 4 ¶¶ 41–50. In Colorado, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in

6

exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Colo. Rev. Stat. § 38-8-106(1). A plaintiff invoking this statute must therefore prove "(1) a transfer was made by the Debtor; (2) without receiving reasonably equivalent value in exchange; and (3) the Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer." *In re Behrends*, No. AP 14-1377 EEB, 2017 WL 4513071, at *7 (Bankr. D. Colo. Apr. 10, 2017); *accord CB Richard Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 530 (Colo. App. 2010) (teaching that "a creditor may show that the debtor did not receive reasonably equivalent value for the transfer and that the transfer rendered the debtor insolvent" to show constructive fraud). In addition, "[t]he variety of constructive fraud found in section 38-8-106(1) only applies to creditors whose claims existed *before* the transfer," *CB Richard Ellis*, 251 P.3d at 530, and "[t]here is no need to prove fraudulent intent in order to establish constructive fraud under section 38-8-106(1)." *Id.* at 532. If the plaintiff is successful, it "may," among other things, "obtain an '[a]voidance of the transfer . . . to the extent necessary to satisfy [its] claim,'" *Inniss v. Pure Agrobus., Inc.*, No. 20CA1398, 2022 WL 22928652, at *7 (Colo. App. Aug. 4, 2022) (quoting Colo. Rev. Stat. § 38-8-108(1)(a)), subject to certain limitations not raised here. *See* Colo. Rev. Stat. § 38-8-109.

Each element of Colo. Rev. Stat § 38-8-106(1) is satisfied here.

### A. Transfer by a Debtor

The 2020 recording of the quitclaim deed to the Property was a transfer made by a debtor.

There is little doubt that Schubiner was a "debtor" then: the Michigan state court had by that time entered a roughly $14 million judgment against Schubiner and in favor of the plaintiff, *Schubiner I*, 2019 WL 12383195 at *9, and a CUFTA "debtor" is "a person who is liable on a

claim." Colo. Rev. Stat. § 38-8-102(7). A "claim," in turn, "means a right to payment, whether or not the right is reduced to judgment" or exists in various other forms. Colo. Rev. Stat. § 38-8-102(3). The judgment is therefore a claim for which Schubiner was liable to the plaintiff.

And the recording was a "transfer." A "[t]ransfer[] means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." Colo. Rev. Stat. § 38-8-102(13). That definition is a "broad[]" one. *Jeffrey v. Notary*, No. 19CA1024, 2020 WL 14046881, at *9 (Colo. App. Nov. 5, 2020). And it is one that is satisfied here. Schubiner purchased the Property in 1992. ECF No. 149-1. The 2020 quitclaim deed reflects that he conveyed the Property to Harbor on March 23, 2020. ECF No. 149-8. An interest in the Property therefore went from Schubiner to Harbor on that date.

The defendants demur. Schubiner's 1996 amendment to Harbor's Operating Agreement "contributing" the Property, they say, was the real transfer, not the 2020 recording of the quitclaim deed. ECF No. 149-5; ECF No. 165 at 35.

The suggestion has little to commend it. Under CUFTA, a transfer of real property occurs when it is "so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." Colo. Rev. Stat. § 38-8-107. The parties point to no case interpreting this section, but "other jurisdictions have interpreted identically worded statutes to mean that a transfer is made when a deed is recorded." *Corpus v. Arriaga*, 294 S.W.3d 629, 635 (Tex. App. 2009) (collecting cases); *see In re Unglaub*, 332 B.R. 303, 319 (Bankr. N.D. Ill. 2005) (holding that "[t]he perfected transfer of an interest in the Colorado Property did not occur until the Mortgage was recorded"). That accords with Colorado property law: Colorado has "a race-notice recording statute" in which documents "conveying, encumbering, or affecting the

8

title to real property . . . may be recorded in the office of the county clerk and recorder of the county where such real property is situated." Colo. Rev. Stat. § 38-35-109(1). Such recording "creates constructive notice, which under normal circumstances will leave subsequent liens in a priority position junior to a prior recorded lien." *Joondeph v. Hicks*, 235 P.3d 303, 306 (Colo. 2010) (en banc). Prior to recording, Harbor's mere possession of a document indicating transfer did not constitute a "perfected transfer of an interest." *In re Unglaub*, 332 B.R. at 317; *see In re Marlar*, 252 B.R. 743, 759 (8th Cir. B.A.P. 2000) (noting under Arkansas law, "a subsequent bona fide purchaser will not be charged with constructive notice of the transfer of property until the deed is recorded"). In other words, recording is what perfects the transfer of real property such that a different good-faith purchaser cannot now acquire an interest superior to that which was recorded.

A different species of the same argument is that the 1996 Harbor Operating Agreement amendment resulted in Schubiner holding only "bare legal title" to transfer to Harbor in 2020. ECF No. 165 at 32–34; ECF No. 161 at 4–5. Because "[a]n interest in property consisting of bare legal title holds no tangible economic value," in the federal bankruptcy context, courts have held that "the transfer of bare legal title does not constitute a fraudulent transfer." *In re Kirst*, 559 B.R. 757, 763 (Bankr. D. Colo. 2016). The concept also existed at common law in Colorado predating CUFTA, *see Cortez Land & Sec. Co. v. Stabler*, 268 P. 526, 527 (Colo. 1928), although the defendants have not cited any Colorado cases post-dating CUFTA — or, for that matter, any case from other states that have adopted the uniform legislation that is CUFTA's basis — importing the concept.

Nevertheless, assuming that the doctrine applies within CUFTA generally, it has no specific application here. For one thing, the concept has relied on state-law concepts of implied

9

trusts to distinguish between "bare legal title" and equitable title. *See, e.g.*, *In re Kirst*, 559 B.R. at 763 ("[T]he question is whether under Colorado law, Mrs. Nelabovige made a gift of a one-third (1/3) interest in the Fairplay house to Mr. Kirst. . . . In a resulting trust, the transfers to and from Mr. Kirst were of bare legal title only, Mrs. Nelabovige held the equitable title, and the fraudulent transfer claim fails."); *In re N.S. Garrott & Sons*, 775 F.2d 462, 467 (8th Cir. 1985) ("[W]here under state law the debtor's conduct gives rise to a constructive trust, so that the debtor holds only bare legal title to this property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold property subject to the same restrictions."); *In re Hunt*, No. 2:11-BK-58222-ER, 2015 WL 5749794, at *10 (Bankr. C.D. Cal. Sept. 30, 2015) ("In evaluating Defendant's contention that no fraudulent transfer could occur because Debtor possessed only bare legal title to the Properties, the Court must look to Texas state law."). And in Colorado, there are "three situations where a resulting trust is properly found." *Shepler v. Whalen*, 119 P.3d 1084, 1089 (Colo. 2005) (en banc). Two require an express trust, of which there is no evidence here. *Id.* The third is "where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person." *Id.* (quoting *Page v. Clark*, 592 P.2d 792, 797 (Colo. 1979)). But for this variety of resulting trust to exist, "it is necessary that a person other than the grantee prior to or at the time of the purchase should pay or assume an obligation to pay the purchase price." *Howell v. Franchise Funding, Inc.*, 526 P.2d 682, 685 (Colo. App. 1974) (quoting 5 A. Scott, The Law of Trusts § 457 (3d ed. 1967)). But here, Schubiner purchased the Property in 1992, ECF No. 149-1, and says he conveyed it to Harbor in 1996, ECF No. 149-5. The defendants cite no case, state or federal, from any jurisdiction indicating that such a situation — a person conveying a property to an LLC in which

10

he holds 100% interest four years after his own personal purchase of the property— could create an implied trust, nor has the Court found any.

Moreover, Schubiner's actions do not comport with this theory. To the contrary, after 1996, loans taken out against the Property identified Schubiner as the borrower. ECF No. 149-7. For example, on October 10, 2013, Schubiner signed a Deed of Trust relating to a $1,900,000.00 loan from TCF National Bank, which was secured by the Property. *Id*. That does not accord with Schubiner's interest in the Property having "no tangible economic value." *In re Kirst*, 559 B.R. at 763.

The defendants have another arrow in their quiver. They argue that the plaintiff had actual notice that the Property was owned by Harbor, not Schubiner, when Schubiner provided tax returns and financial statements to the plaintiff in 2014. ECF No. 165 at 34–35; ECF No. 161 at 6–9. After all, an "unrecorded instrument or document" can "be valid . . . against those having notice thereof prior to acquisition of such rights." Colo. Rev. Stat. § 38-35-109(1). Such "inquiry notice" requires a "purchaser" having such notice to investigate the chain of title further. *Dyle v. Cost Fund 1, LLC*, No. 23CA2093, 2024 WL 4233433, at *3 (Colo. App. Sept. 19, 2024). The plaintiff, the defendants' thesis runs, had such inquiry notice about Harbor's prior ownership and therefore cannot unwind the conveyance to Harbor as fraudulent.

But, of course, the plaintiff is not a "purchaser" at all; it is a judgment creditor seeking to avoid the Property's transfer. Moreover, the relevant inquiry for CUFTA is whether the nature of that alleged ownership would prevent "a good-faith purchaser of the asset from . . . acquir[ing] an interest in the asset that is superior to the interest of the transferee." Colo. Rev. Stat. § 38-8-107; *cf. In re Weisman*, 5 F.3d 417, 420 & n.5 (9th Cir. 1993) (noting that 11 U.S.C. 544(a)(3), which allows bankruptcy trustee to avoid property transfers that are "voidable by . . . a bona fide

11

purchaser of real property . . . creates the legal fiction of a perfect BFP" as opposed to measuring the trustee's knowledge). Nothing about a private deal between Schubiner and himself as the principal of Harbor, or privately disclosing Harbor's interest in the Property to the plaintiff would prevent a hypothetical good-faith purchaser from doing so. Recording a lien or a deed would. And, to be sure, there are other ways to give such notice, *see Tiger v. Anderson*, 976 P.2d 308, 310 (Colo. App. 1998) (noting that "a party in open and exclusive possession of real estate under an apparent claim of ownership gives notice of the occupant's legal and equitable claims"), but the notice must be one that would make "the failure of a prospective purchaser" to learn of those facts one that would "preclude that person from being a good faith purchaser." *Id.* The defendants point to no case indicating that to be a good-faith purchaser, one would have had to delve into financial disclosures made between private parties not publicly recorded anywhere.

The 2020 recording of the quitclaim deed, then, was a "transfer.'"

### B. Reasonably Equivalent Value

That transfer was one made without receiving reasonably equivalent value in exchange.

"Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." Colo. Rev. Stat. § 38-8-104(1). "'Value' is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." *Id.* § 38-8-104 cmt. 2. "Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition" of value. *Id*. "'Reasonably equivalent value,'" in turn, "does not necessarily mean market value and requires analysis of all the facts surrounding the transaction to determine what is reasonable in a particular circumstance." *ND Mgmt. Servs., LLC v. Two G-Ventures, LLC*, No. 18CA1905, 2020 WL 14045346, at *10 (Colo. App. Apr. 2, 2020) (citing

12

*Schempp v. Lucre Mgmt. Grp., LLC*, 18 P.3d 762, 765 (Colo. App. 2000)). But "market value is an important factor to consider in the assessment." *Schempp*, 18 P.3d at 765.

Here, that market value is $950,000. ECF No. 149-14 at 4 (response to Interrogatory 7 providing value of Harbor); *see* ECF No. 167-1 at 13 (SOF 21) (agreeing that Harbor's sole asset is the Property). The 2020 quitclaim deed reflects that Harbor gave Schubiner only $10 for the Property. ECF No. 149-8 at 1. That is not reasonably equivalent value.

To be sure, the overall transaction exchanged Schubiner's original mortgage on the Property for Harbor's new $585,000.00 mortgage. ECF No. 149-11 at 1; ECF No. 149-12 at 135:6–136:9; ECF No. 167-1 at 9 (SOF 16). But replacing an encumbrance on the Property with a bigger encumbrance hardly presents any "utility from a creditor's viewpoint." Colo. Rev. Stat. § 38-8-104 cmt. 2. And even if the roughly $267,000 used to satisfy Schubiner's mortgage were counted as value, it is still orders of magnitude below the $950,000 market value — or, for that matter, the value north of $585,000 that the new lender ascribed to the Property — and therefore cannot be reasonably equivalent value. *See Silverstein v. Wolf*, No. 22-cv-01817-PAB-NRN, 2025 WL 2418495, at *7 (D. Colo. Aug. 21, 2025) (considering fraudulent transfer under Colo. Rev. Stat. § 38-8-105); *Fifth Third Bank v. Morales*, No. 16-cv-01302-CMA-STV, 2017 WL 6492108, at *5 (D. Colo. Dec. 19, 2017) (finding no reasonably equivalent value, concluding that "all of the circumstances surrounding the Transfer suggest that it occurred for no other reason than to avoid Ms. Morales's payment obligation to Plaintiff," and granting summary judgment).

Nor does either defendant contend otherwise. Instead, Harbor insists that the $50,000 in equity it gave to Schubiner in 1996 is the appropriate measure of value exchanged for the Property. ECF No. 165 at 36. It is unclear what value $50,000 in equity in an LLC given to a person having a 100% interest in the LLC has. But regardless, courts "measur[e] value at the

13

time of the transfer." *In re Palladino*, 942 F.3d 55, 59 (1st Cir. 2019) (construing 11 U.S.C. § 548); *see In re Grandote Country Club Co.*, 252 F.3d 1146, 1152 (10th Cir. 2001) (using section 548 precedent to interpret CUFTA); *In re Unglaub*, 332 B.R. at 319 (rejecting argument under CUFTA that $300,000 loan made prior to recording of a mortgage was the correct measure of value and holding that debtor "received no consideration . . . when he recorded the Mortgage"). The transfer occurred in 2020. What happened 24 years earlier, then, cannot inform whether reasonably equivalent value was exchanged for the 2020 transfer.

In short, the consideration Harbor gave to Schubiner in 2020 for recording the quitclaim deed was not reasonably equivalent value.

## C. Insolvency

That leaves the question of whether Schubiner was insolvent in March 2020 or became insolvent as a result of the transfer of the Property to Harbor. Colo. Rev. Stat. § 38-8-106(1). "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Colo. Rev. Stat. § 38-8-103. "[U]nder both Colorado law and the Bankruptcy Code, the fair value balance sheet method is essentially mandated for individuals." *In re Blair*, 588 B.R. 605, 614 (Bankr. D. Colo. 2018) (citing *CB Richard Ellis*, 251 P.3d at 532–33) (other citations omitted). This test requires the Court to "determine the fair value of the debtor's assets and the extent of [his] liabilities" in March 2020. *CB Richard Ellis*, 251 P.3d at 534.

According to Schubiner, as of March 2020, his net worth was $4,303,193.00. ECF No. 149-14 at 4–5 (response to Interrogatory No. 7). This total did not include the December 2019 judgment entered against him "in the amount of $13,992,936.05 plus attorney fees, consultant fees, interest, and costs." *Schubiner I*, 2019 WL 12383195, at *9. Because this judgment is a liability that counts against his assets in determining whether he was insolvent in March 2020,

14

*see* Colo. Rev. Stat. § 38-8-102(5)–(7), Schubiner was insolvent with a negative net worth in March 2020 with assets totaling less than $5 million and debts exceeding $16 million. The defendants do not argue otherwise. Accordingly, the plaintiff is entitled to relief under Colo. Rev. Stat. § 38-8-106(1).

## II. Remedy and Other Claims

Once a transfer is determined to be fraudulent, "a creditor . . . may obtain . . . [a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim." Colo. Rev. Stat. § 38-8-108(1)(a). Indeed, in fraudulent conveyance actions, "[t]he primary remedy . . . is a declaration that the fraudulent conveyance is void as to the judgment creditor. In other words, the remedy sought is to return the property fraudulently conveyed to its prior status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor." *Miller v. Kaiser*, 433 P.2d 772, 775 (Colo. 1967). Having found in the plaintiff's favor on its fraudulent transfer claim under Colo. Rev. Stat. § 38-8-106(1), the proper remedy is to avoid the March 2020 transfer of the Property.

That leaves the question of whether it is necessary to address the plaintiff's motion as to its first and fourth claims for actual fraud and reverse-piercing of the corporate veil, respectively. In its complaint, the plaintiff seeks alternative forms of relief that would allow it either to collect on its judgment against Schubiner directly or obtain a new judgment against Harbor that it could then use to collect on its judgment. ECF No. 4 at 18. Ultimately, what the plaintiff seeks is to "finally begin collecting on" the judgment it obtained against Schubiner in Michigan by one of these methods. ECF No. 149 at 21. The remedy discussed above allows them to do that by avoiding the transfer of the Property; given that remedy, and given that Harbor's sole asset is the Property, deciding further whether a judgment is warranted against it under a reverse corporate veil piercing theory seems unnecessary. Accordingly, the Court need not address the plaintiff's

15

summary-judgment arguments on its other claims. *See Gerber v. Wingerter*, No. 09-cv-02000-PAB-MEH, 2011 WL 13220490, at *1 (D. Colo. Mar. 29, 2011); *Weiskopf v. Tiny Cocoons, Inc.*, No. 4:23-cv-71-JEM, 2025 WL 2531834, at *5 (N.D. Ind. Aug. 28, 2025).

### III. Remaining Unjust Enrichment Claim

The plaintiff did bring an unjust enrichment claim on which it did not move for summary judgment. ECF No. 4 ¶¶ 51–68. It is unclear whether the plaintiff brings the unjust enrichment claim against both defendants or only against Harbor. And, regardless, given the conclusion that the transfer should be avoided, it is possible that the plaintiff may no longer wish to proceed with the unjust enrichment claim because it has achieved its aims through the motion and because the existence of the remaining claim means that the Court cannot yet enter judgment since a "decision . . . that adjudicates fewer than all the claims" generally "does not end the action as to any of the claims or parties" and the plaintiff has not argued that this case ought to deviate from that. Fed. R. Civ. P. 54(b).

### IV. Affirmative Defenses

The plaintiff also seeks summary judgment on three of the defendants' affirmative defenses: (1) unclean hands, (2) failure to mitigate damages, and (3) "Michigan court rules and laws governing supplementary proceedings." ECF No. 149 at 19–22; ECF No. 34 at 23–24. Summary judgment is warranted as to all three.

First, "[t]he doctrine of unclean hands prevents 'one who has engaged in improper conduct regarding the subject matter of the cause of action,' to pursue the claim at issue." *Sender v. Mann*, 423 F. Supp. 2d 1155, 1167 (D. Colo. 2006) (quoting *Salzman v. Bachrach*, 996 P.2d 1263, 1270 (Colo. 2000)). The party invoking this doctrine must show that (1) the opposing party is guilty of conduct involving fraud, deceit, unconscionability, or bad faith; (2) the conduct is directly related to the matter at issue; (3) this conduct injures the other party; and (4) affects the

16

balance of equities between the litigants. *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1030 (D. Colo. 2014). The defendants offer no evidence of any of these. The closest they come is citing Schubiner's declaration alleging improper collusion between the plaintiff and entities involved in the Michigan state court judgment. ECF No. 167-1 at 5 (SOF 8) (citing to ECF. No. 164 ¶ 40). While the Court does not determine credibility on a motion for summary judgment, the declaration has no evidence to back up its claim of collusion, and the defendants cannot defeat summary judgment with "self-serving testimony" alone. *Shen Eng'g, Inc. v. Brighton*, 748 F. Supp. 3d 1086, 1099–1100 (D. Utah 2024). Such assertions "do not satisfy the burden . . . to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper." *Crowell v. Alford*, No. 22-cv-00416-REB-MDB, 2023 WL 5938829, at *4 (D. Colo. Sept. 12, 2023). And, in all events, "[i]t does not appear to this Court [ ] that the allegations of injurious conduct by Plaintiffs are directly related to the alter ego and fraudulent transfer claims in this case, but are raised to attack the judgment rendered in the [Michigan] state court action." *Herman v. PBIA & Co.*, No. 19-cv-00584-PAB-GPG, 2022 WL 17547720, at *3 (D. Colo. Aug. 2, 2022), *recommendation adopted*, 2023 WL 2824318 (D. Colo. Jan. 23, 2023). The defendants' rehashing of events related to the underlying state judgment do not show that "the conduct is directly related to the matter at issue," an essential element of the defense. The plaintiff is, therefore, entitled to judgment as to the unclean hands affirmative defense.

  The defendants do not contest the remaining two defenses. And, as argued by the plaintiff, the failure to mitigate defense appears to be a bare desire to challenge the Michigan judgment. ECF No. 149 at 20. An affirmative defense brought in this case is not a proper avenue to lodge such a challenge. Given that the "defendant[s] bear[ ] the burden of proving the affirmative defense of failure to mitigate," *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,

210 F.3d 1207, 1230 (10th Cir. 2000), and that they offer no proof or legal support for this affirmative defense, summary judgment is warranted. *Mahajan v. Boxcar Holdings, LLC*, No. 18-cv-00533-CMA-SKC, 2019 WL 399230, at *6 (D. Colo. Jan. 31, 2019). Similarly, the Court previously addressed the defendants' arguments with regard to Michigan state law regarding "supplementary proceedings" and concluded that it does not require the plaintiff to seek relief in Michigan in "a singular, supplementary proceeding" and Michigan law does "not preclude Plaintiff from filing a separate case to pursue its fraudulent transfer, unjust enrichment, and corporate piercing claims." *Can IV Packard Square LLC*, 2024 WL 4474768, at *6. And, again, the defendants offer no evidentiary or legal support for this affirmative defense. Accordingly, summary judgment is warranted.

As a final note with regard to affirmative defenses, Schubiner argues in his response that "these matters could have been raised in [ ] prior proceedings but were not and [the plaintiff] should be precluded from relitigating under principles of claim preclusion." ECF No. 161 at 16. He further argues that the plaintiff "should be barred from relitigating these issues in a different forum." *Id*. However, no party has sought that relief in a motion and a response is not the proper place to request relief. D.C.COLO.LCivR 7.1(d); Fed. R. Civ. P. 7(b)(1).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment, ECF No. 149, is **GRANTED**.

It is further ORDERED that, at the conclusion of this case, **JUDGMENT** will enter in favor of Plaintiff Can IV Packard Square, LLC, and against Defendants Harbor Real Estate Company, LLC, and Craig E. Schubiner, jointly and severally.

It is further ORDERED that the transfer of the Property, reflected in the quitclaim deed dated March 23, 2020, which was recorded with the Pitkin County Clerk and Recorder on March 25, 2020, is **AVOIDED** under Colo. Rev. Stat. § 38-8-108(1)(a) because it was a fraudulent transfer pursuant to Colo. Rev. Stat. § 38-8-106(1).

It is further ORDERED that summary judgment is **GRANTED** as to the following affirmative defenses asserted by the defendants: (1) unclean hands, (2) failure to mitigate damages, and (3) "Michigan court rules and laws governing supplementary proceedings." ECF No. 34 at 23–24.

It is further ORDERED that Defendant Harbor Real Estate Company, LLC's Motion for Partial Summary Judgment, ECF No. 148, is **STRICKEN**.

It is further ORDERED that, **on or before September 29, 2025**, the plaintiff shall file either (1) a stipulation of dismissal of its unjust enrichment claim pursuant to Fed. R. Civ. P. 41(a)(1)(ii), (2) a motion to dismiss its unjust enrichment claim pursuant to Fed. R. Civ. P. 41(a)(2), or (3) a notice informing the Court that it intends to move forward with the unjust enrichment claim.

DATED this 22nd day of September, 2025, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge